Mr. Echols Good morning, your honors, and may it please the court. My name is Barak Echols, and I represent the plaintiff appellant, Mr. Terez Cook. This case comes before the court on an appeal of summary judgment awarded to defendants on plaintiff's claim of a Fourth Amendment violation through the non-consensual entry into his and his fiancée's apartment, which occurred during the course of his arrest. Your honors, the overarching issue on this appeal is whether the district court's grant of summary judgment was proper, and we'd respectfully submit, based on the record below and the concerning whether consent was granted, summary judgment was improper. But this court asked us to specifically address two questions, and I'd like to turn to those first. The first question was what standard this court ought to apply in reviewing the district court's decision that the affidavit submitted by the fiancée, the Ms. Dede's affidavit, was a sham affidavit. And as we set forth in our papers, and as I'll explain in greater detail shortly, we believe the proper answer there is this is a two-part inquiry. The first inquiry is whether it is a sham affidavit as a matter of law, which is something that this court should be able to review and should review de novo. And then the second question is whether it was proper to exclude it, which, like other evidentiary rulings, would be reviewed for abuse of discretion. The second issue this court asked us to address is whether this court's decision in Gerald M. v. Connealy and subsequent cases nonetheless would mandate awarding summary judgment to defendants based on implied consent. And Your Honors, neither Connealy nor the subsequent cases presents any situation similar to that here. There was no opportunity and there were no subsequent actions after the unlawful entry that would manifest consent to that initial unlawful entry. But they had an arrest warrant. You're not the police. You're not questioning that. No, Your Honor. We're not questioning that. And my client... So they were going to snatch him anyway, right? She couldn't prevent the police from coming in and arresting him. If they had a warrant to enter the apartment. They had a warrant. No, they did not have a warrant. They had an arrest warrant. They only found afterwards that there was an outstanding warrant for a parole violation. Right. They did not have a warrant to arrest him. Yeah, but they did have... There was a warrant for his arrest. Yes, Judge. But the situation, the way this played out is the police were following up on some cell phone records that they had identified. They identified that the cell phone belonged to Ms. Dede. They went to the apartment to ask her questions. They had no outstanding... They had no outstanding warrant for my client with respect to... But there was an outstanding warrant. Was there not? Judge, there was an outstanding warrant... Arrest warrant. For a parole violation, yes. Whatever there was, he was arrestable in her apartment. She couldn't resist that. And so what's the harm? What's the... Judge, the harm here is the Fourth Amendment violation of an unlawful entry. And that alone is... But it's not unlawful because they have an arrest warrant. I thought Peyton against New York prohibited them from entering without a warrant, even to execute an arrest warrant. That's exactly right, Judge. You can't violate... But Judge Posner has raised the same question I have, though, which is, in essence, even if Mr. Cook can show a violation of Fourth Amendment rights here, what on earth are the damages? Well, Judge, as this court has noted in the Hessel case, there are presumed damages. There... A person may sue for a Fourth Amendment violation without showing proof of injury. It's a presumption. The way... I'm sorry. I know. But... But specifically, Judge... He was going... He obviously can't get damages for the fact that he was arrested, can he? No, Judge. And he doesn't challenge that. Now, specifically as a set forth in his complaint, he challenges the fact that there were certain items of his that were removed and taken from the residence. There were lyrics that he was working on as an aspiring artist that were in a notebook that were seized. He never received those back. There were other items. There was a cell phone and other items that were taken. And he also has pleaded that he had severe emotional distress, saw a counselor for months after that to address that. But the law is that there is a presumption. The emotional distress is because of the... Because the entry was without consent as opposed to the fact that he got arrested and sent to prison for several years? That's what's pleaded, Your Honor. Okay. The law is that there is a presumption of injury for a violation of a party's constitutional right. That's what the law is. And the jury is the one that determines what damages are appropriate. And to the extent that this court would, I think, and has previously held that part of the issue here is not specifically his injury, but to the extent that there is a violation, what's appropriate to deter that violation from occurring again? And maybe the damages are nominal. Maybe they are none. But that's not the decision for us to reach here, nor the decision for the trial court. That's a decision for the jury. On the Theda affidavit, could you tell me, was there any indication that the circumstances of the police officer's entry, specifically whether they had her consent or not, was that an issue at all in Mr. Cook's criminal trial? No, Judge. It was not. We just had the kind of passing comment. You let them in. Yes. Yes. That's exactly right, Judge. And you can also see from the way that the testimony came in from the defendant officers, the way each of them testified is, we saw the defendant. We entered the apartment. We saw the defendant. We entered the apartment. They didn't say anything about she gestured. She invited us in. She opened the door. He invited us in. It was not an issue at all. That's a single question. And that distinguishes this from all the cases in which this court has found her to be a sham affidavit, where the initial questioning, the initial issue was subject to extensive questioning. It was usually, almost always, the case of a deposition, repeated questions. And as you've seen in the cases that we've cited, there would be a substantial number of instances where the fact that was testified to was asserted again and again and again under oath. The Miller case, the EBC case, we're talking about three sworn statements, eight sworn statements. Was he on supervised release when this entry took place? When the entry into the apartment, Judge? Yes, he was on parole. Yes. And did, with the terms of the parole or supervised release, did they provide, did they allow a search of his premises? I don't know standing here, Judge. The reason that... Well, if they did, wouldn't that damage his case rather considerably? Well, Judge, I would say that that issue was not raised at all in the court below. The defendants haven't raised it. You would think that they would, if it were the case that that resolved this issue. I myself have not seen the warrant, but I have to presume that that is not the case, given the fact that the case has proceeded as far as it has. I have to say, I think this is a case of terrible waste of time. Well, Judge, I... There are not going to be any damages here. We did ask you all to take on this case, didn't we? Yes, Judge, you did. And there were two specific questions that you asked us to address. And I think that's because, not to second-guess the court, but because they are important questions. Why are they important? I don't understand that. Well, Judge, because we have a mistake here. We have an error. It's a harmless error, because there was an arrest warrant. They should have had the warrant, and they would have barged in and taken him off. And you can take things in plain view if you're properly in the premises, right? Well, Judge... So why is this a lawsuit? Well, Judge, what you can't do is you can't reopen... I don't want to get damages for this. You can't reopen a door when it's closed. Oh, come on. What do you mean you can't reopen a door when it's closed? When you don't have a warrant. Did she lock it? Judge, apparently it wasn't locked, because it was reopened. What do you mean apparently? Of course it wasn't locked, since they just turned the knob and entered. Yes, that's correct, Your Honor. Right, so it was not locked. That's correct. Don't say it was apparently not locked. It was not locked. Yes, Judge, it was not locked. But what we have here, I don't think it's a waste of time to protect an individual's right to be free from illegal searches. No, because there was an arrest warrant. He didn't have any Fourth Amendment rights. There was no warrant for entry into the premises. How are they supposed to arrest him without entering? You think you can't enter an apartment in order to arrest a person when you have a warrant? Judge, they had no idea he was there. Even if they had known he was there, Peyton says they have to get a search warrant to enter the house. That's absolutely correct, Judge. That's what the law is. You have to have a search warrant. I see I'm well into my time for rebuttal. Well, but she needed a search warrant except she said it was her, wasn't his apartment, and she let him in. Judge, there is a dispute on that. There are five different stories about whether that was the case. She swears that was not the case. The plaintiff swears that was not the case. The officers have changed their story, whether they were let in, whether there was a gesture allowing them in, whether the plaintiff himself invited them in. There are four or five. What did she say to them, you can't come in? She didn't have a chance, Judge. What do you mean she didn't have a chance? She was yanked out of the apartment. She was yanked? That's what the record below says. Yes, Judge. What, she was grabbed? She was grabbed and pulled into the hallway. Well, wait a second. They knock on the door. She opens the door. Now, did she say, get lost? Judge, she said... What did she say? Answer my question. Did she say, get lost? No, Judge. What did she say? She said, I'm still in my pajamas. Can I please put some clothes on? Right. She met him in a common hallway. She didn't... The thing is, they buzz, she opened the door to her apartment. She met them in a common hallway, in the hallway, right? That's correct, Judge. So the door was open, she was already outside the apartment? And then she returned to put on some clothes and closed the door. But she didn't yank her out of the apartment. There's two steps here, Judge. They let her go back into the apartment. She closed the door. The facts as set in the record... Well, you know, taking every inference... Something about leaving the door ajar, as I recall. Still, Judge, even with a door ajar, you're not allowed to barge in without any consent. They said they saw him. That doesn't make a difference, Judge. That doesn't make a difference. There is a need for a warrant for a search and for an entry, and there was none here. Okay, thank you very much, Mr. Eccles. Thank you, Judge. Mr. DeVries? Thank you. Good morning, Your Honors. May it please the Court. I represent Detectives O'Neill and Baldwin. And the first issue I'd like to address is the matter of the alleged coerced consent. I think we need to clarify the record. Mr. Cook's position has been that there was coerced entry because of being yanked from the apartment and being under duress and crying and confused. But her trial testimony, and it's in the appendix at 139, did the detectives come in the apartment? Yes. You let them in? Yes. So we have the entry. Mr. DeVries, let me ask you about that verb, let, in that trial testimony. First of all, was consent to the entry an issue in the criminal trial? To my understanding, it was not. Your clients didn't testify about consent, did they? Not about consent. No, I think it was asked. They just said they went in. Correct. Okay. So she says she let them in. And I guess my concern with that is, I can imagine this in terms of, you know, a response to a polite question. May we come in? Yes, of course. You're always welcome. That's sort of one end of the spectrum. The other end of the spectrum is that there are several armed policemen present demanding to come in, and she doesn't say no, and doesn't put up any physical resistance. Now, in terms of the constitutional standard of consent, how does the word let resolve where we are on that spectrum? I think we get to the point where the trial judge looked at this and determined that it was clear, in her mind, that it was let. She's looking at exactly the same record we are. Correct. And the context of the question is, did the detectives come in the apartment? Yes. So we have, they came in. Yes. It's not, did they barge in? The next question is. They came in. Right. They could have barged. They could have tiptoed. They could have been invited in. That's not answered yet. Correct. Then we have the question, did you let them in? Did you let them in is the follow-up, and she says yes. And so where is it on that spectrum? I think that it's a reasonable conclusion that it was her intent to allow them in. How on earth? How on earth? Look, this is summary judgment, and it's one question, one critical verb. And she has later said, no, that's not what I intended. Why isn't that an issue for trial? Because I think this is where the trial court looked at it and made a conclusion. Why does her intent matter? Did she object? There's no evidence that she ever objected. Does the law require someone to object when the police come into their house? Do we just presume consent if you don't physically block them or say, wait a minute, stop? I don't believe that the law requires them to object because there are instances where there is a coerced consent. There's a consent by force, and the case law is clear on that. But where we have here with the issue of coerced consent is they came in the apartment. She testified to it. The next question, did they find Therese in the apartment? Yes, he came out. Did they arrest him? Not right away, but like within five minutes probably. So we have the arrest. Then she's asked, how did this make you feel? I didn't know what was going on. I was in shock. She's referencing the arrest of Mr. Cook. Next question, did you ask any questions? Yeah, I asked him what was going on, and I remember that I think Detective O'Neill pulled me into the hallway because I asked what was going on. So this is in the context of he had already been arrested. They take her into the hallway. This isn't a coerced entry into this apartment. The entry had already occurred prior to the arrest. Mr. DeVries, even if we don't consider Ms. Thede's affidavit, we still have several different versions of this entry and whether there was consent, don't we? I don't believe we have different versions. What about the police report prepared by Officer Walsh? If we consider the Walsh report, he said that they were allowed into the apartment by Mr. Cook. So we have consent. Now if that's... It's the defense burden to show consent here, right? Right. Okay, so how do you grant summary judgment if you've got one officer saying, Cook gave us consent, and you've got Cook saying, no way. You've got the other two officers saying, no, Ms. Thede gave us consent. How do you resolve that on summary judgment? Cook was in the bedroom when she first talked to the officers. The other two officers... Cook knows he didn't consent, or he says he didn't consent. Walsh says he did, and that's why they went in. And if you look at it in another point of view, if they came in and arrested him, did he object? He may have impliedly consented as well, but I don't think that's where the argument has been going. We're talking here about the core of the Fourth Amendment, right? Correct. Police entry into a home. Without a warrant, correct? Without a warrant for entry, correct. Without a warrant for entry, and you agree that the police are not allowed to enter to arrest just because they've got a warrant, right? Right, and the warrant was not for the crime that they were looking into. Right, well, even if it had been, they need an arrest, they need a search warrant to get into the house, correct? Or consent. Or consent. They either need a warrant or consent, right? Or exigent circumstances. Okay, well, that seems to be off the table, right? That could be a factual question. Okay, it's not in front of us right now. I agree. Okay. I don't think you should actually, despite what I just said, I don't think you should concede that that the person, that the, you know, she or he or whatever have to consent. I think they just don't have to object. That's Georgia versus Randolph. Correct. You have to object. If you don't object, consent is presumed. Isn't that right? I agree. And back to the Walsh record, he said there was consent. Wait a second. Georgia against Randolph, though, involved two people, right? One gave consent, the other objected, correct? I think we only need one to give consent. One is enough to give consent, that's correct. And then Randolph, if you want to, you've got to at least put up an objection if you're going to have that kind of an issue. But the idea that you have to object, that the police are allowed to come in until you say stop, is a startling notion under the Fourth Amendment. I think, though, that under the Gerald M. case and the cases after it, there has to be some evidence that there's an objection to them being there. That's been pretty clear, I think. You think so? Yes. Well, Gerald M. is surely at the outer boundaries of what the Fourth Amendment allows. And there you at least had the mother turning back to the officer, saying watch out for the puppy, apparently going along with his entry. But the idea that you have to have an affirmative objection is, it seems to me, a long stretch from where we are. We have more than that, Bill, Your Honor. Here we have her admission in her affidavit that she let them in. She allowed them to stay. What was she supposed to do? Throw them out? Tell them they're not to be in her house. And at that point, once they're in, obviously they see Mr. Cook. So the burden is on the homeowner to know her legal rights and affirmatively object when the police enter her home unlawfully. In this case, I believe so. Unless you have a situation of deception or coercion, which was addressed in the Schleckroth case, and it was also cited in Gerald M., and you can't have coercion or deception. In the Bumper case as well, where the officer said, I've got a warrant, he really didn't. That's clear abuse. So if the police walk in silently, that's okay? I would imagine they would announce why they're there. I mean, I hadn't contemplated whether the police would walk in silently through the front door and not say a word. That may be a different situation. Let me take one more factual thing. Did they not... Is it the fact that they didn't come into the apartment through the door until they saw Cook? They say they had consent from her, but yeah, when they saw Cook... Well, no, I'm talking about consent, not consent. They didn't come into the apartment until they saw Cook. Correct. So they were outside this entire time? Yes. So the entry didn't occur until they saw him. Right, and then they go in and take him. Now that gets to the point of where the damage is. You go in and you take him, he's got a warrant. Why is a case like this brought? You could say that maybe somebody's attacking the underlying conviction. There's no dispute that they were not in the apartment before they saw Cook. Correct. So they didn't come in until they saw him. And as to the search... And they recognized him because he matched the description of the robbery suspect. Correct, an armed robber. So they see a guy that matches the description. They're outside the apartment. They see a guy in the apartment that matches the description. Right. And that's when they went in. And they had suspected that she had been involved with him because of the court records. Well, apart from all that. How long... Just one more quick factual question. How long had passed since the robbery they were investigating? A matter of no more than, I think, three days or so. Days. I'm not sure, but I think that was about what it was. It happened in Marinette, and this was done in... Okay, thank you, Mr. DeVries. Mr. Echols, do you have anything further? Yes, Your Honor. Directly to your question, Judge Posner. Acquiescence, mere acquiescence to unlawful entry is not consent. You cannot imply consent from that. Why not? The Supreme Court says so in Schneckcloth. The Supreme Court says so in Bumper and in Keneally and every other case thereafter. The rule is you do not... Keneally? ...imply consent through acquiescence. And so what we have here, the question on the facts, the way it played out, taking every inference in the light most favorable to my client, to the party opposing summary judgment, is you had four officers come to an apartment... What are you asking for in damages? We're asking that the jury determine what the appropriate damages are for the seizure. You're not asking for any particular amount? Yes. We pleaded $25,000 in damages and $50,000 in punitives but that is going to be an issue for the jury. As you have all said, Your Honors, the jury may determine that there are no damages. Let me take you back to the facts that I described. The door is open. They're outside. They see a person inside who matches the description of somebody that was a robbery suspect. They still don't have any authority to go in and make an arrest? No, Judge. The vague description of the suspect is probably the same as I am, 5'9", African-American. That's the description. If you think there is an issue for someone to be arrested, you get a search warrant. They could have stayed outside the apartment. They could have called the magistrate. Was there a search? Yes, there was a search subsequent, Judge. You had first the unlawful entry without consent. Do you think they entered in order to conduct a search? What was their motive? They entered in order to question the plaintiff here and to conduct a search. They wanted to talk to Thede about the cell phone records. That's why they first arrived. It was to ask about the cell phone records. Nothing more than that. Then, after the entry, they saw my client in the apartment, and then they entered. There was the issue of whether their consent was granted or not, but they saw my client and they entered. The dispute here is whether there was consent. What if they'd entered, but they just arrested him and they hadn't searched at all? The entry is the unlawful action. Why? Where is that in the 4th Amendment? That is the core of the 4th Amendment. No, it isn't. The word does not appear in the 4th Amendment. The 4th Amendment is about searches and seizures. It's not about entry. It's been interpreted by the Supreme Court. Where did that come from? It's not in the 4th Amendment. It's in Peyton v. New York, right? Right. It's not in the 4th Amendment. It's what the courts have been doing, which is expanding it. To the extent that we're going to say it's not interpretation. Judge, I think it goes back to English law that a man's home is his castle and you cannot enter a castle. That's not actually in the Constitution. That was the basis for the 4th Amendment. No. The 4th Amendment, no. That's not true. The 4th Amendment was about the searches that the English authorities conducted of warehouses where the Americans were storing tea and what have you on which they hadn't paid taxes. That's what it's about. Not about entering a home looking for a criminal. In order to conduct the searches, you have to enter. It's part and parcel. Yes, if there's a search. Yes. But there can be entries that don't involve a search. We did have a search here, Judge. Mr. Echols, could you comment on how you think the 4th Amendment would apply to the police simply coming through the door to have a conversation? Without consent. That's not permitted, Judge. Our position would be without consent. That's not permitted. The Supreme Court has said you need to have consent. Acquiescence is not enough. Keneally is a different situation. A very small... Thank you very much, Mr. Echols. You were appointed, were you not? Yes, Judge. We thank you for your efforts on behalf of your client. Thank you, Judge.